UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS FRENCH, as administrator of the Estate of Curtis French,<br><br>                         Plaintiff,<br>       v.<br><br>PIERCE COUNTY, a municipal corporation; JOHN DOES 1-10,<br><br>                         Defendants. | CASE NO. 3:22-cv-05079-DGE<br><br>ORDER GRANTING DEFENDANT PIERCE COUNTY'S MOTION TO DISMISS |

## I.     INTRODUCTION

This matter comes before the Court on Defendant Pierce County's Motion to Dismiss for Failure to State a Claim. (Dkt. No. 4.) The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the record and hereby GRANTS the Motion to Dismiss.

## II.     BACKGROUND

On the evening of November 3, 2019, Curtis French was at his home in Tacoma, WA with his family. (Dkt. No. 1 at 2.) He had been drinking heavily to the point he was stumbling

around the house and mumbling incoherently. (*Id*.) At one point, Curtis grabbed a knife and threatened to harm himself. (*Id*.) Concerned for his well-being, his family called 911 as Curtis became more belligerent and aggressive. (*Id*. at 4.)

Several Pierce County Sherriff's Officers ("PCSOs") responded to the call and arrived at the house. (*Id*.) When the PCSOs arrived, Curtis was on the porch holding a knife. (*Id*.) Curtis stumbled down the steps and bumped into a car in the driveway. (*Id*.) At this point, several of the PCSOs shot Curtis. (*Id*.) He died at the scene. (*Id*.)

Plaintiff Thomas French, on behalf of the Estate of Curtis French, has brought claims under 42 U.S.C. § 1983 for excessive force and for negligence against Pierce County and John Does 1-10 who were PCSOs on the scene on the night of Curtis' death. (*Id*. at 3–4.) Plaintiff alleges "Defendant Pierce County and its officials maintained or permitted official policies or customs that caused the damages . . . , including a failure to provide adequate training and supervision to law enforcement officers regarding constitutional limits on the use of deadly force." (*Id*. at 3.)

Plaintiff further alleges the identities of the PCSOs involved in this incident "have been concealed by Defendant Pierce County." (*Id*. at 2.)

### III.   DISCUSSION

**A. Legal Standard for Motions to Dismiss**

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't.*, 901 F.2d 696, 699 (9th Cir. 1988). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6)

motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id.* at 547.

### B. Plaintiff Fails to State a Section 1983 Claim

"While local governments may be sued under [42 U.S.C.] § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Instead, to state a viable § 1983 claim against a municipality, a plaintiff must allege facts to support a reasonable inference that the execution of a policy, custom, or practice of the municipality was the "moving force" behind a deprivation of his constitutional rights. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978).

There are three established scenarios in which a municipality may be liable for constitutional violations under § 1983. "First, a local government may be held liable 'when implementation of its official policies or established customs inflicts the constitutional injury.'" *Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1249 (9th Cir. 2012) *overruled on other grounds by Castro v. Cty. of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (quoting *Monell*, 436 U.S. at 708). Second, a plaintiff can prevail on a § 1983 claim against a municipality by identifying acts of omission, such as a pervasive failure to train its employees, "when such omissions amount to the local government's own official policy." *Id.* Finally, a municipality "may be held liable under § 1983 when 'the individual who committed the constitutional tort was

an official with final policy-making authority' or such an official 'ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Clouthier*, 591 F.3d at 1250 (quoting *Gillette v. Delmore*, 979 F.2d 1342, 1346–47 (9th Cir. 1992)).

Plaintiff appears to allege all three. The Court discusses each theory in turn.

1. Official Policy or Established Custom

In support of the existence of a policy or custom, Plaintiff's Complaint asserts "Defendant Pierce County and its officials maintained or permitted official policies or customs that cause the damages described herein[.]" (Dkt. No. 1 at 3.) Plaintiff further asserts "that the PCSOs involved in this incident were acting under a policy or custom of Pierce County," and "[i]n addition, several officers were involved, further suggesting that they were acting according to custom." (Dkt. No. 8 at 3.) Plaintiff also cites *Lee v. City of L.A.*, 250 F.3d 668, 682–83 (9th Cir. 2001) for the position that "a *Monell* claim filed by way of 42 U.S.C. § 1983 will withstand a motion to dismiss 'even if the claim is based on nothing more than a bare allegation that the individual officers' conduct conformed to official policy, custom, or practice." (*Id*. at 2.) But the Ninth Circuit has more recently stated that *Monell* claim pleadings must still comply with the pleading requirements of intervening decisions by the Supreme Court in *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009):

> First, to be entitled to the presumption of truth, allegations in a complaint or counterclaim may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively. Second, the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation.

*A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012).

1    *A.E.* involved claims against a county based on abuse two foster children suffered while
2    under supervision of the county's social workers.  The complaint at issue alleged the defendants
3    "performed all acts and omissions regarding AE's foster care placement and supervision 'under
4    the ordinances, regulations, customs, and practices of [the county.]'"  666 F.3d at 636–637.  It
5    further alleged the defendants "'maintained or permitted an official policy, custom or practice of
6    knowingly permitting the occurrence of the type of wrongs' that it elsewhere alleged."  *Id*. at
7    637.  Despite these assertions, the Ninth Circuit noted the complaint "did not put forth additional
8    facts regarding the specific nature of this alleged 'policy, custom or practice,' other than to state
9    that it related to 'the custody, care, and protection of dependent minors[.]'"  *Id*.  As a result, the
10   Ninth Circuit concluded, "[w]e agree with the district court that the First Amended Complaint
11   failed to state a § 1983 claim against the County, but hold that the district court abused its
12   discretion when it denied leave to amend."  *Id*. at 636.

13   Pursuant to *A.E.*, facts about the specific nature of the alleged policy, custom, or practice
14   are required; merely stating the subject to which the policy relates (i.e. excessive force) is
15   insufficient.  Moreover, for an unwritten policy or custom to support a *Monell* claim, it must be
16   so "persistent and widespread" that it constitutes a "permanent and well settled" practice.  *See*
17   *Monell*, 436 U.S. at 691.  Plaintiff here has provided no factual allegations to support either that
18   a policy or custom exists or that there is an unwritten policy or custom so persistent and
19   widespread that it constitutes a permanent and well settled practice.  Plaintiff has failed to
20   provide any factual allegations that support an inference that because "several officers were
21   involved" that the PCSOs' conduct was conforming to some established custom within the
22   department in violation of § 1983.  Plaintiff cannot rely solely on conclusory allegations without
23   supporting factual allegations.  *Twombly*, 550 U.S. at 555.

Cases cited in Plaintiff's Response do not support Plaintiff's position. *Reyes v. City of Santa Ana*, makes no mention of *A.E.* 832 Fed. App'x. 487 (9th Cir. 2020). It also involved the allegation of a policy or custom where the "officers routinely arrest individuals by employing the same procedure used to detain Reyes." *Id.* at 492. One of the officers involved also acknowledged his department "trains its officers to order people out of homes at gunpoint." *Id.* at 493. These facts supported the conclusion that a policy or custom existed.

In *Wheeler v. Broggi*, the court noted the alleged unwritten policy was supported by "the scope of the alleged violations in the underlying investigation, the number of King County officers involved, and Defendant King County's persistent defense of those violations in the underlying criminal proceedings and this lawsuit." 2020 WL 2111249, at *6 (W.D. Wash. May 4, 2020). A more thorough review of the docket indicates the defendant law enforcement officers were alleged to have repeatedly deprived the plaintiff of exculpatory evidence in his underlying criminal case all the while the county continued to maliciously prosecute the plaintiff, thereby ratifying the officers' conduct. Amended Complaint at 15–16, *Wheeler v. Broggi*, No. 19-01410 (W.D. Wash Sept. 27, 2019).

The court in *Taylor v. City of Seattle*, did not address *A.E.*, but did note there was a specific allegation "that the city of Seattle employs a custom of 'officers giving conflicting commands' followed by application of excessive force, which proximately caused plaintiff's injuries." 2019 WL 11770816, *3 (W.D. Wash. Apr. 9, 2019). In *Duckworth v. Pierce Cnty.*, the court noted that the plaintiff "points to numerous, *specific* 'failures to train'" in support of *Monell* liability. 2015 WL 1965367, *3 (W.D. Wash. Apr. 30, 2015) (emphasis added).

1    Unlike the present matter, all the cases Plaintiff cites contain specific facts supporting the
2 existence of policy or custom.  Plaintiff's Complaint, therefore, does not assert facts identifying
3 the specific nature of the existence of an alleged policy, custom, or practice.
4    2.   Failure to Train
5    Plaintiff asserts Pierce County failed "to provide adequate training and supervision to law
6 enforcement officers regarding constitutional limits on the use of deadly force." (Dkt. No. 1 at
7 3.)  But Plaintiff's Response provides little analysis of the alleged failure to train other than
8 citation to *Duckworth*. (*See* Dkt. No. 8 at 3.)
9    "In limited circumstances, a local government's decision not to train certain employees
10 about their legal duty to avoid violating citizens' rights may rise to the level of an official
11 government policy for purposes of § 1983." *Connick v. Thompson*, 563 U.S. 51, 61 (2011).  To
12 allege municipal liability under § 1983 for failure to train, Plaintiff must allege: (1) the existing
13 training program is inadequate in relation to the tasks the particular officers must perform; (2)
14 the failure to train amounts to deliberate indifference to the rights of persons with whom the
15 police come into contact; and (3) the inadequacy of the training actually caused the deprivation
16 of the alleged constitutional right.  *Merritt v. Cnty. of Los Angeles*, 875 F.2d 765, 770 (9th Cir.
17 1989).  "A municipality's culpability for a deprivation of rights is at its most tenuous where a
18 claim turns on a failure to train." *Connick*, 563 U.S. at 61.
19    Plaintiff's claim for failure to train hinges on the single instance of Curtis French's death.
20 But the Complaint offers no facts about the existence of an inadequate training program in
21 relation to the tasks the officers were engaged in in this case; about how the failure to train
22 amounts to deliberate indifference of the rights of persons with whom the officers come into
23 contact; or about why or how the inadequacy of the alleged training caused the deprivation of the
24

constitutional right.  Without supporting factual allegations, Plaintiff fails to state a claim for relief based on failure to train.

        3.   Ratification

In the Response, Plaintiff also alleges that "a policy or custom may be inferred here because, after the PCSOs unconstitutionally shot and killed Mr. French, Pierce County went further than failing to take 'steps to reprimand or discharge their subordinates,' or failing to 'admit their conduct was in error[,]'" Pierce County "actively conceal[ed] the identity of the PCSOs involved in an attempt to protect them from consequences." (Dkt. No. 8 at 3.)  The Court construes this argument as a ratification argument under *Monell*.

Ratification under *Monell* requires that a local government "ratif[y] a subordinate's unconstitutional decision or action and the basis for it." *Clouthier*, 591 F.3d at 1250 (quotations omitted).  "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *Id*. (quotations omitted).  "There must, however, be evidence of a conscious, affirmative choice" on the part of the authorized policymaker. *Gillette,* 979 F.2d at 1347.  That an officer was not reprimanded or provided with additional training cannot support a theory of ratification without more.  *Clouthier*, 591 F.3d at 1253–54.  But a "single decision by a municipal policymaker may be sufficient to trigger section 1983 liability under *Monell*, even though the decision is not intended to govern future situations." *Gillette*, 979 F.2d at 1347.

The Complaint fails to allege facts supporting ratification because there are no allegations in the Complaint that Pierce County policymakers approved a subordinate's decision and the basis for it. *Gillette,* 979 F.2d at 1347.  Instead, Plaintiff's Response provides additional allegations that Pierce County's failure to reprimand the officers and failure to "admit their

conduct was in error," together with the concealment of the identities of those involved, establish Pierce County's ratification. (Dkt. No. 8 at 2–3.)   Arguably, these additional allegations viewed in the light most favorable to Plaintiff could support a *Monell* claim based on ratification. However, Plaintiff cannot amend his Complaint through his Response to Defendant's Motion to Dismiss.  Because these additional allegations are not in the Complaint, the current Complaint is insufficient.  Accordingly, the Court construes these additional allegations as a request for leave to amend, which the Court grants.

At this juncture, Plaintiff's § 1983 claim as asserted in the current Complaint is DISMISSED WITHOUT PREJUDICE.

### C.  Negligence

"[A] plaintiff claiming that a municipality has acted negligently may recover after proving the existence of a duty, a breach thereof, a resulting injury, and proximate causation between the breach and the resulting injury." *Washburn v. City of Fed. Way*, 310 P.3d 1275, 1287 (Wash. 2013) (quotations omitted).  Plaintiff here alleges that "[a]s a direct and proximate cause of Defendants' negligence, Plaintiff has been damaged[.]" (Dkt. No. 1 at 4.)  Defendant moves to dismiss Plaintiff's negligence claim arguing that "[t]he only acts alleged by the Complaint are intentional, not negligent." (Dkt. No. 4 at 7.)

Plaintiff cites *Beltran-Serrano v. City of Tacoma*, arguing that intentional conduct and negligent conduct can coexist in a single case based on a police shooting.  442 P.3d 608 (Wash. 2019).  But Plaintiff still must satisfy the pleading requirements of *Iqbal* and *Twombly*.  Plaintiff has offered no factual support for his negligence claim.  Plaintiff's Response points to the PCSOs' failure to de-escalate the situation (Dkt. Nos. 8 at 4; 1 at 3), but Plaintiff has failed to allege in his Complaint that the PCSOs had a duty to de-escalate or that their failure to de-

escalate caused the alleged damages. Without more, Plaintiff cannot rely on the conclusory allegation that Defendant acted negligently.

Plaintiff's negligence claim, therefore, is DISMISSED WITHOUT PREJUDICE.

### IV.   CONCLUSION

Accordingly, and having considered Defendant's motion, the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that Defendant's Motion to Dismiss (Dkt. No. 4) is GRANTED WITHOUT PREJUDICE.

1. Plaintiff will have until **July 15, 2022** to file an amended complaint that addresses the deficiencies identified herein. If an amended complaint is not filed by this deadline, the Court will enter an order dismissing the Complaint with prejudice.

Dated this 28th day of June 2022.

David G. Estudillo
United States District Judge