UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| THOMAS FRENCH,<br><br>  Plaintiff,<br>  v.<br><br>PIERCE COUNTY et al.,<br><br>  Defendants. | CASE NO. 3:22-cv-05079-DGE<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 18, 26) |

### I.    INTRODUCTION

This matter comes before the Court on Defendants Pierce County, Aaron Wolfe, and Jason Chavez's Motions to Dismiss the First Amended Complaint ("FAC").  (Dkt. Nos. 18, 26.) The Court considered the record and the pleadings filed in support of and in opposition to the Motions and hereby grants them in part and denies them in part.

## II. BACKGROUND

On November 3, 2019, "Curtis French was at home in Tacoma, [Washington] with Crystal French (ex-wife and current girlfriend), Thomas French (son), Jordan French (daughter-in-law), and his two grandsons." (Dkt. No. 15 at 2.)

Curtis French had been heavily drinking and was inebriated. (*Id.*) At some point, Curtis French "grabbed a knife and threatened to harm himself." (*Id.*) Jordan French called 911 for assistance. (*Id.*) While on the phone, Curtis French became "more belligerent and aggressive." (*Id.*) With the exception of a grandson who was asleep, all family members exited the house and "waited outside for the police to arrive, in hopes they would take Curtis [French] to sober up." (*Id.*)

"At least six Pierce County Sheriff's Officers . . . were dispatched to the call." (*Id.*) The dispatched officers were told "Curtis [French] was standing on the porch with a knife in hand, that Curtis [French] was extremely intoxicated, and that Curtis [French] was saying he was going to kill himself." (*Id.* at 3.) Plaintiff asserts "Officers knew that he was in a fragile mental state." (*Id.*)

When Officers Aaron Wolfe and Jason Chavez[1] (collectively, "Officers") arrived, "Curtis [French] was still standing on the porch . . . with a knife in his hands." (*Id.*) Officers Wolfe and Chavez, while "standing in the middle of the street in front of the house" had their firearms drawn on Curtis French. (*Id.*) Plaintiff alleges the Officers and the family members were not in immediate danger. (*Id.*)

---

[1] The FAC refers to Defendant Jason Chavez as "Officer Sanchez." Plaintiff acknowledges this error in the Reply to the Motion to Dismiss. Plaintiff shall file a new amended complaint to correct this error.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 18, 26) - 2

Barely able to walk, Curtis French stumbled down the house steps and bumped into a vehicle in the driveway. (*Id*.) He showed clear signs of intoxication and was holding his hands out to his side. (*Id*.) When Curtis French "stumbled clumsily in the direction of officers Wolfe and Chavez, they shot him twelve times, within seconds of arriving at the house." (*Id*.) "Curtis [French] did not attack, or attempt to attack, the officers." (*Id*.) Curtis French died in front of his family. (*Id*.) Plaintiff alleges the Officers "did not attempt to de-escalate the situation." (*Id*.) Less than a minute after firing, the other officers who had been dispatched arrived at the scene. (*Id*.)

Plaintiff's First Amended Complaint brings 42 U.S.C. § 1983 claims for excessive force and Washington State negligence claims against Pierce County, Officer Aaron Wolfe, and Officer Jason Chavez. Defendants move to dismiss all claims for failure to state a claim.

### III. DISCUSSION

Federal Rule of Civil Procedure 12(b) motions to dismiss may be based on either "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). Material allegations are taken as admitted and the complaint is construed in the plaintiff's favor. *Keniston v. Roberts*, 717 F.2d 1295, 1300 (9th Cir. 1983). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true," even if such allegations are "doubtful in fact." *Id*. at 555.

The complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Id*. at 547.

**A.  Excessive Force**

    1.  <u>42 U.S.C. § 1983 Claim against Officers Wolfe and Chavez</u>

Plaintiff asserts a 42 U.S.C. § 1983 Fourth Amendment excessive force claim against the Officers.  To maintain a claim, Plaintiff must assert facts establishing the Defendants (1) acted under color of state law and (2) violated Curtis French's civil rights.  42 U.S.C. § 1983.  The first element is met as the FAC asserts the Officers are "police officer[s] employed by Pierce County Sherriff's Department," and that "[a]ll acts committed by [the Officers] were done under color of state law and within the course and scope of [their] employment with the [Pierce County Sheriff's Department]."  (Dkt. No. 15 at 2.)

As to the second element, Fourth Amendment excessive force claims are evaluated under a reasonableness standard that balances "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham v. Connor,* 490 U.S. 386, 396 (1989) (internal citations omitted).  Proper application of reasonableness "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id*.  These factors are not exhaustive.  "In some cases, for example, the availability of alternative methods of capturing or subduing a suspect may be a factor to consider." *Chew v. Gates*, 27 F.3d 1432, 1440 n.5 (9th Cir. 1994).

        a.  *Immediate Threat to Others*

The FAC alleges Curtis French was so drunk he could not walk, let alone coordinate an attack. (Dkt. No. 15 at 2–3.) It also alleges that, although he was standing on the porch with a knife in his hand when the Officers arrived, he stumbled "clumsily in the direction of" the Officers without attacking or attempting to attack the Officers. (*Id*. at 3.) It further alleges the Officers were standing in the middle of the street (*id*.), presumably a distance from Curtis French.

In *Smith v. City of Hemet*, the Ninth Circuit found a suspect who was similarly standing on the porch while his wife was on the lawn when officers arrived did not pose an immediate threat to anyone. 394 F.3d 689, 703 (9th Cir. 2005) ("When Officer Reinbolt arrived, Smith was standing on his porch alone and separated from his wife. He had no guns or other weapons in his possession and there were none in the house—and he was clad in his pajamas. Under these circumstances, the nature of the crime at issue provides little, if any, basis for the officers' use of physical force.") Admittedly, *Smith* is distinguishable because unlike in *Smith*, Curtis French had a knife in his hand. However, taking the allegations in the FAC as true, Curtis French did not appear to pose an immediate threat to others. Arguably, there was no basis justifying the use of physical force.

b. *Severity of the Crime*

According to the FAC, Curtis French had not committed a crime. (*Id.* at 2.) His daughter-in-law called for assistance for Curtis French's own safety, not because he was threatening others. (*Id.*) And, although Curtis French was holding a knife when the Officers arrived, he was standing alone and not actively threatening anyone. (*Id.* at 3.) Thus, as alleged in the FAC, no crime had been committed, making it difficult to conclude shooting Curtis French 12 times was warranted.

       c.  *Resisting Arrest or Attempts to Evade*

       The FAC alleges Curtis French stumbled towards the Officers' direction while clearly inebriated. (*Id.* at 3.) As described by the FAC, there is no indication he was resisting arrest or attempting to evade law enforcement.

       d.  *Availability of Alternative Methods of Capturing or Subduing*

       Taking the facts alleged in the FAC as true, there would have been other means of engaging Curtis French rather than shooting him 12 times. Though it may later be identified through discovery that the Officers did attempt to engage Curtis French by shouting commands or taking other steps, for now the FAC indicates the Officers took no action other than to shoot Curtis French 12 times.

       Considering the severity and extent of the force used, the *Graham* factors, and the availability of other means of subduing Curtis French, the FAC alleges sufficient facts to show it was unreasonable for Officers Wolfe and Chavez to shoot Curtis French 12 times.

       Accordingly, Plaintiff's § 1983 excessive force claim against the Officers is sufficiently pled.

       2.  <u>42 U.S.C. § 1983 *Monell* Claim against Pierce County</u>

       "While local governments may be sued under § 1983, they cannot be held vicariously liable for their employees' constitutional violations." *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1096 (9th Cir. 2013). Instead, a plaintiff must establish "the local government had a deliberate policy, custom, or practice that was the moving force behind the constitutional violation [they] suffered." *Whitaker v. Garcetti*, 486 F.3d 572, 581 (9th Cir. 2007) (citation and internal quotation marks omitted); *see also Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691–92 (1978). A plaintiff must allege "(1) 'a particular municipal action *itself* violates federal law, or

directs an employee to do so'; or (2) the municipality, through inaction, failed to implement adequate policies or procedures to safeguard its community members' federally protected rights." *Hyun Ju Park v. City and County of Honolulu*, 952 F.3d 1136, 1141 (9th Cir. 2020) (quoting *Board of County Com'rs of Bryan County v. Brown*, 520 U.S. 397, 404, 407–408 (1997)). A "municipality also can be liable for an isolated constitutional violation if the final policymaker 'ratified' a subordinate's actions. *Christie v. Iopa*, 176 F.3d 1231, 1238 (9th Cir. 1999).

    a. *Official policy*

Plaintiff alleges "Defendant Pierce County and its officials maintained or permitted official policies or customs that caused the damages described herein, including a failure to provide adequate training and supervision to law enforcement officers regarding constitutional limits on the use of deadly force." (Dkt. No. 15 at 3.) As support for this allegation, Plaintiff identifies Pierce County "required" its officers to attend the BLEA but failed to provide any additional training before allowing its officers to respond to "a high-stress call involving an intoxicated and mentally unstable person." (*Id*. at 3.) Plaintiff further alleges the Officers' training "was inadequate in relation to the task they were asked to perform" and that "inadequate training and supervision ultimately led to the constitutional deprivations described herein." (*Id*. at 4.)

As a preliminary matter, training at the BLEA is required by State law and administered by the State. *See* Wash. Rev. Code § 43.101.020 ("There is hereby created and established a state commission to be known and designated as the Washington state criminal justice training commission."); Wash. Rev. Code § 41.101.200(1) ("All law enforcement . . . shall engage in basic law enforcement training which complies with standards adopted by the commission[.]").

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 18, 26) - 7

To the extent Plaintiff alleges training at the BLEA was inadequate, Pierce County would not be the responsible party.

As far as Pierce County's alleged policy of inadequate training and supervision, Plaintiff offers no facts supporting the conclusion that allowing graduated BLEA officers to engage in law enforcement duties without providing additional training or supervision amounted to "a particular municipal action *itself* [that] violate[d] federal law, or direct[ed] an employee to do so." *Hyun Ju Park*, 952 F.3d at 1141.

Accordingly, Plaintiff fails to identify an official policy that led to the injuries claimed. Instead, the primary focus of Plaintiff's claim is Pierce County's alleged failure to train the Officers.

      b.  *Failure to implement adequate policies:  failure to train*

"[I]nadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989).  "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Brown*, 520 U.S. at 410.  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (citing *Brown*, 520 U.S. at 409).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.  It is only in instances where "the unconstitutional consequences of failing to train [are] so patently obvious

that a city [would] be liable under § 1983 without proof of a pre-existing pattern of violations." *Id*. at 64.

In this matter, the FAC does not identify a pattern of similar constitutional violations such that Pierce County had notice the Officers were not properly trained before allowing them to respond to calls. And, although the FAC alleges Pierce County failed to train the Officers "regarding constitutional limits on the use of deadly force" (Dkt. No. 15 at 3), the FAC does not assert these officers were not provided such training at the BLEA, that Pierce County was aware of this, and that nonetheless, Pierce County deliberately disregarded the need to provide such training to its officers.

Also, while the FAC asserts Pierce County should have provided "additional relevant training" (*id*. at 3–4), the FAC does not identify the additional relevant training that should have been provided. Thus, there is no basis to conclude the unconstitutional consequences of failing to train were so patently obvious that Pierce County could be liable under § 1983 without proof of a pre-existing pattern of violations.

    c. Ratification

"To show ratification, a plaintiff must prove that the 'authorized policymakers approve a subordinate's decision and the basis for it.'" *Christie v. Iopa*, 176 F.3d at 1239 (quoting *City of St. Louis v. Paprotnik*, 485 U.S. 112, 127 (1988)). It "generally requires more than acquiescence." *Sheehan v. City & Cnty. of San Francisco*, 743 F.3d 1211, 1231 (9th Cir. 2014), rev'd in part on other grounds, 575 U.S. 600 (2015). "We have found municipal liability on the basis of ratification when the officials involved adopted and expressly approved of the acts of others who caused the constitutional violation." *Trevino v. Gates*, 99 F.3d 911, 920 (9th Cir. 1996). "The mere failure to discipline [an officer] does not amount to ratification of their

allegedly unconstitutional actions." *Sheehan*, 743 F.3d at 1231.  Moreover, an organizational entity is not "an official" sufficient for a *Monell* ratification claim.  *See Dizon v. City of S. San Francisco*, 2018 WL 5023354, at *5 (N.D. Cal. Oct. 16, 2018) (dismissing *Monell* ratification where complaint alleged the municipality in general, and not an official with final policy-making authority, ratified the alleged conduct); *Shulthies v. Nat'l Passenger R.R. Corp.*, 650 F. Supp. 2d 994, 1001 (N.D. Cal. 2009) (ratification claim "fails because the third *Monell* avenue applies to an 'official,' not to the organizational entity.").

The FAC asserts "Pierce County . . . ratified the conduct" of its officers when it failed to maintain the Officers on administrative leave pending a final investigation of the shooting and by "Pierce County actively tr[ying] to conceal the identities" of the officers involved.  (Dkt. No. 15 at 4.)  As the FAC fails to identify an official with policy-making authority who is alleged to have approved of the Officers' actions, the FAC as written is insufficient to support a *Monell* ratification claim.

In addition, even assuming the FAC did identify an official with policy-making authority, it still lacks facts sufficient to support ratification.  While the FAC asserts the Officers were allowed to return to duty before an investigation was completed and otherwise not disciplined, the failure to discipline does not establish ratification.  *Sheehan*, 743 F.3d at 1231.  And, although the Court previously indicated a *Monell* ratification claim might be supported by the combination of a failure to discipline and facts establishing active concealment of the identities of the officers involved (*see* Dkt. No. 14 at 9), the FAC does not identify how Pierce County actively concealed the Officers' identities.  The FAC notes only that it submitted a public records request to an agency identified as South Sound 911.  (Dkt. No. 15 at 4.)  It makes no allegation

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 18, 26) - 10

Plaintiff submitted a public records request directly to Pierce County or that Pierce County had an obligation to disclose information to Plaintiff and chose to disregard that duty.

In short, the FAC fails to allege facts sufficient to support a *Monell* claim.

**B.  Negligence**

To allege negligence under Washington State law, Plaintiff must allege a duty, breach of that duty, causation, and damages. *Brugh v. Fun-Tastic Rides Co.*, 8 Wash. App. 2d 176, 180 (2019) (referencing *Degel v. Majestic Mobile Manor, Inc.* 129 Wash. 2d 43, 48 (1996).

1.  <u>Negligence against the County</u>

The FAC asserts "Defendants breached [their duty to perform their policing functions in accordance with the Fourth Amendment] by . . . dispatching two poorly trained rookie officers . . . and by failing to have those officers wait for additional backup."  (Dkt. No. 15 at 6.) Presumably, these allegations are aimed at Pierce County because Pierce County (or someone working for the county) would have received the call and then taken steps to have the Officers respond to the call.  Similarly, failing to "have those officers wait" suggests Pierce County was directing the Officers' actions once Officers Wolfe and Chavez arrived at the scene.

The FAC does not identify what training was deficient such that the Officers were "poorly trained."  It identifies only that the State administered BLEA training, which Pierce County was not responsible for, disproportionately provided firearms training as compared to "crisis management" and "patrol de-escalation" training.  (*Id.* at 4.)  There also is no factual allegation the non-firearms training was deficient or that Pierce County was required to provide additional non-firearms training in the period between the officers graduating from the BLEA and the date of the incident.

As to the allegation that Pierce County failed to have the "officers wait for additional backup," the FAC does not identify any factual allegations that Pierce County was aware of the specific circumstances the Officers encountered when they arrived at the scene such that Pierce County could and should have directed the Officers to either engage the situation or wait for other officers to arrive. (*Id*. at 6.) Nor is there any factual allegation the arrival of additional officers would have prevented the Officers from making the intentional decision to shoot Curtis French.

In short, Plaintiff's identified basis for its negligence claim against Pierce County is unsupported.

2. <u>Negligence Claim against Officers Wolfe and Chavez</u>

As to the negligence claim against the Officers, neither of the two allegations identified as support for the negligence claim appear directed at the Officers. At most, it might be argued Plaintiff alleges the Officers failed to wait for the arrival of additional law enforcement officers. Again though, there is no factual allegation indicating the arrival of additional officers would have prevented the Officers from making the intentional decision to shoot Curtis French.

Moreover, Plaintiff's § 1983 claim is predicated on the Officers' alleged use of excessive force in violation of the Fourth Amendment. (Dkt. No. 15 at 5) ("Defendants . . . seized Curtis French using unreasonable and unnecessary force without justification, in violation of the Fourth Amendment . . . which guarantees the right to be free from unreasonable seizures and deprivations of life"). As such, intentional conduct is required. *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989) ("Violation of the Fourth Amendment requires an intentional acquisition of physical control."). This means Plaintiff must identify conduct or actions other than the excessive force complained of to support the negligence claim.

The State Supreme Court identified that "ordinary negligence principles apply in situations that involve both a claim of . . . unprivileged use of force *and* the duty to act reasonably in carrying out law enforcement functions." *Beltran-Serrano v. City of Tacoma*, 442 P.3d 608, 612 (Wash. 2019). Therefore, the "series of actions culminating in the use of deadly force may be analyzed in its constituent parts or, alternatively, as involving either negligent or intentional conduct." *Id*. In support of their negligence claim, the plaintiff in *Beltran-Serrano* identified the officer "unreasonably failed to follow police practices calculated to avoid the use of deadly force," and that "leading up to the shooting" the officer failed "to respond appropriately to clear signs of mental illness or impairment," decided "to continue to engage with Beltran-Serrano in English," and "prevent[ed] him from walking away." *Id*. at 611. The plaintiff further identified the officer lacked adequate training and failed "to recognize the ineffectiveness of using a stun gun against a mentally ill individual." *Id*.[2] Considering the "totality of the circumstances" involved in *Beltran-Serrano*, the Court concluded the "series of actions leading up to the decision to shoot" supported the negligence claim. *Id.* at 612.

In contrast, as to the Officers in this case, Plaintiff appears to base the negligence claim against the Officers solely on their decision not to wait for additional officers to arrive at the scene. (Dkt. No. 15 at 6.) This one allegation does not identify a "series of actions" leading up to the decision to shoot sufficient to support a negligence claim.

**C.     Qualified Immunity**

---

[2] The factual allegations supporting the negligence claim in *Beltran-Serrano* were based on testimony of the plaintiff's police practice expert and other witnesses who described the applicable law enforcement practices and the specific training provided to the officer. *Id.* at 611 n.5. There are no similar facts asserted in the FAC.

ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS TO DISMISS (DKT. NOS. 18, 26) - 13

1      Pierce County seeks dismissal of the entire FAC based on qualified immunity. "A court
2   considering a claim of qualified immunity must determine whether the plaintiff has alleged the
3   deprivation of an actual constitutional right and whether such right was clearly established such
4   that it would be clear to a reasonable officer that his conduct was unlawful in the situation he
5   confronted." *NAACP of San Jose/Silicon Valley, et al. v. City of San Jose, et al*, 562 F. Supp. 3d
6   382, 395 (N.D. Cal. 2021)
7      "[D]etermining claims of qualified immunity at the motion-to-dismiss stage raises special
8   problems for legal decision making." *Keates v. Koile*, 883 F.3d 1228, 1234 (9th Cir. 2018). This
9   is because "courts may be called upon to decide far-reaching constitutional questions on a
10  nonexistent factual record[.]" *Kwai Fun Wong v. United States*, 373 F.3d 952, 957 (9th Cir.
11  2004). "If the operative complaint 'contains even one allegation of a harmful act that would
12  constitute a violation of a clearly established constitutional right,' then plaintiffs are 'entitled to
13  go forward' with their claims." *Keates*, 883 F.3d at 1235 (9th Cir. 2018) (quoting *Pelletier v.*
14  *Fed. Home Loan Bank of San Francisco*, 968 F.2d 865, 872 (9th Cir. 1992)).
15     Because the Court concludes the FAC has sufficiently pled a § 1983 excessive force
16  claim against the Officers, consideration of Defendant's request to dismiss based on qualified
17  immunity at this stage of the litigation is inappropriate.

## IV.   CONCLUSION

19     Accordingly, and having considered Defendants' Motions to Dismiss (Dkt Nos. 18, 26),
20  the briefing of the parties, and the remainder of the record, the Court finds and ORDERS that the
21  Motions are GRANTED in part and DENIED in part as follows:
22     1. The motion to dismiss the 42 U.S.C. § 1983 claim against Defendants Aaron Wolfe
23        and Jason Chavez is DENIED.

2. The 42 U.S.C. § 1983 claim against Defendant Pierce County is DISMISSED.

3. The negligence claims against all Defendants are DISMISSED.

4. Plaintiff shall file a new amended complaint to correctly identify Defendant Jason Chavez by March 3, 2023.

Dated this 17th day of February, 2023.

David G. Estudillo
United States District Judge